UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | |
|---|---|
| CYNTHIA P. JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 6:10-CV-095-BG |
| ) | ECF |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

**I.     Background**

This is a Social Security appeal. Plaintiff Cynthia P. Johnson filed an application for disability benefits claiming that she became disabled when she was fifty-one years old because of chronic pain and depression. (Tr. 133.) An Administrative Law Judge (ALJ) held a hearing and determined that Johnson suffered from a combination of severe impairments, including degenerative disc disease of the lumber and cervical spines, hypertension, and depression. (Tr. 13.) He determined that Johnson was capable of performing limited light work despite her impairments and that she was capable of performing her past work as an administrative clerk, travel agent, and children's director and was therefore not disabled. (Tr. 20-21.) After the Appeals Council declined to review the case, Johnson filed this appeal.

The United States District Judge reassigned this case to the United States Magistrate Judge for all proceedings, but both parties did not consent to the undersigned exercising the court's jurisdiction in this case. The undersigned now files this report and recommendation.

**II.     Legal Standards**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2011). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*.; *see* 20 C.F.R. § 404.1505(a) (2011).

The Commissioner's decision as to whether a claimant is "disabled" under the Act is reached by application of a five step sequential evaluation. 20 C.F.R. § 416.920. Under the sequential evaluation, the ALJ decides whether the applicant (1) is not working in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals a listed impairment in Appendix I of the regulations; (4) has an impairment that prevents him from doing past relevant work; and (5) has an impairment that prevents him from doing any other work. *Id*.

The court's role in reviewing a Social Security appeal is limited to determining whether the Commissioner applied the proper legal standards and whether the record contains substantial evidence to support the Commissioner's decision. *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotations and citation omitted).

### III. The ALJ's Finding that Johnson Could Perform Her Past Work

Johnson complains of the findings the ALJ made at step four of the sequential disability evaluation process. At step four of the sequential disability evaluation, the ALJ must determine whether, given the claimant's residual functional capacity, he can perform his past work. 20 C.F.R. § 404.1520(a)(4)(iv). The term "residual functional capacity" is used to indicate the most a claimant can do despite his impairments. *Id.* § 404.1545(a)(1). In determining residual functional capacity, the Commissioner considers the individual's ability to meet the physical demands, mental demands, sensory requirements, and other requirements of work. *Id.* § 404.1545(a)(4).

Johnson points to an assessment from a State agency physician who determined that she has a severe mental impairment and suffers from moderate deficits in maintaining concentration, persistence, and pace. (Tr. 451-64, 473-75.) Johnson argues that the State agency physician's opinion is supported by other evidence in the record and points to complaints she made of depression and anxiety, reports that her pain was "chronic and demoralizing," prescriptions her doctors prescribed for anti-depressants and anti-anxiety medication, and reports from doctors that she was anxious and suffered from "issues with depression." Johnson claims that the ALJ erred in failing to find that her depression and anxiety resulted in a vocationally significant impairment and that the ALJ's determination as to her residual functional capacity is therefore incomplete and not supported by substantial evidence.

The district court should reject Johnson's argument. The opinion at issue was offered by Nancy Wilson, Ph.D., a non-examining psychologist. (Tr. 451-64, 473-75.) The ALJ considered Dr. Wilson's opinion but decided that, based on other evidence in the record, the opinion was entitled to little weight. The ALJ's determination is supported by substantial evidence. As the ALJ

3

noted, Dr. Wilson also found that Johnson was capable of understanding, remembering, and carrying out complex instructions, interacting with others, concentrating for extended periods of time, and responding to changes. (Tr. 20, 475.) Dr. Wilson's finding that Johnson was capable of concentrating for extended periods of time (Tr. 475) contradicts her opinion that Johnson experienced moderate deficits in concentration and persistence in pace. (Tr. 461, 474.) In addition, as the ALJ noted, evidence that was not available to Dr. Wilson shows that Johnson's depression was not severe. (Tr. 19.) For example, a few weeks after Dr. Wilson wrote her report, Johnson reported during examination that she was not experiencing problems with her depression and that Cymbalta, which she had been prescribed for depression and pain, was working "very well." (Tr. 479.) During an annual examination nearly three months later, Johnson reported only mild depression. (Tr. 573.)

     Finally, as the ALJ found, other evidence shows that Johnson's depression and anxiety would not significantly limit her ability to work. Johnson was referred to W. Truett Smith, Ph.D., a psychologist, in October 2007 to determine whether she was a good candidate for installation of a spinal cord stimulator. (Tr. 438.) Dr. Smith reported that Johnson had an anxious mood with an appropriate affect; that she was oriented to time, person, and place; that her recent and remote memory were intact; and that her judgment and insight were good. (Tr. 19, 440.) Dr. Smith noted that there was no evidence of serious emotional disturbances. (Tr. 441.) He found that Johnson suffered from depression and anxiety that were related to her work but that she was a good candidate for the procedure. *Id.*

     During a psychological examination ordered by Disability Determination Services in November 2008, William A. Montgomery, Ph.D., noted that Johnson was taking Cymbalta for depression and pain and had benefitted from the medication. (Tr. 445.) Johnson told

Dr. Montgomery that her family physician had diagnosed her with Attention-Deficit Hyperactivity Disorder (ADHD) and treated her with Strattera; she also stated that she gained "much benefit" from the medication. *Id*. Johnson reported that the medication had improved her ability to focus and that she did not have significant problems with ADHD at that time and experienced depression an average of one day per week. *Id*. She also reported that she cooked daily, shopped for groceries, paid bills, socialized with friends on a weekly basis, and attended church two to three times per month. (Tr. 446.) Johnson reported that she had a good relationship with her husband and related well with other people; she also denied having any problems with stress in her job as a substitute teacher. *Id*. Dr. Montgomery noted that Johnson "appeare[d] to be coping fairly well with her depression at present" and assigned her a Global Assessment of Functioning of 65. (Tr. 450.) An individual assigned a GAF score of 65 could be expected to exhibit only mild symptoms and only "some difficulty" in social, occupational, or school functioning. American Psychiatric Ass'n Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000) (DSM-IV).

    This is a case in which the ALJ decided that the records from examining psychologists were entitled to more weight than an opinion of a non-examining State psychologist. "[T]he ALJ is entitled to determine the credibility of medical experts . . . and weigh their opinions accordingly." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (citations and internal quotations omitted). The ALJ's "power to judge and weigh evidence includes the power to disregard" such evidence, and courts must uphold such a determination if supported by substantial evidence. *Id*. at 238. The ALJ's decision to give no weight to Dr. Wilson's opinion that Johnson suffered from moderate limitations in her ability to maintain concentration, persistence, or pace and the ALJ's decision that Johnson's mental impairments would not significantly impact upon her ability to perform her past work is supported by substantial evidence. Johnson's contentions to the contrary should be rejected.

The court should also reject Johnson's contention that the ALJ failed to consider how the cervical radiculopathy in her left upper extremity would affect her ability to perform her past work. As the ALJ noted, clinical testing showed mild problems in Johnson's cervical spine: in August 2007, one month after Johnson alleges her disability began, a nerve conduction study showed mild S1 radiculopathy with no active denervation changes. (Tr. 263.) An MRI conducted the same month showed mild contact on the spinal cord at C3-C4, C4-C5, and C5-C6 and mild stenosis. (Tr. 265.) Johnson's treating physician reviewed the results of the tests, prescribed medication, and recommended conservative treatment with physical therapy to address Johnson's neck pain. (Tr. 271.)

Johnson reported an improvement in her neck pain but continued to complain of back pain. (Tr. 285.) However, two months later Johnson underwent treatment with a trial dorsal column stimulator, reported a decrease in pain, and claimed that she was able to return to many of her normal activities. (Tr. 303.) In January 2008 after a permanent stimulator was implanted, Johnson reported "doing very well since the day of the implant." (Tr. 312.) It was recommended that she follow up on an as needed basis. *Id*. In February 2009 Johnson reported a decrease in cervical pain as a result of treatment, and her physical therapist noted good cervical range of motion and only mild pain with cervical extension. (Tr. 570.) In March 2009 Johnson reported that she was "doing better with her cervical pain." (Tr. 572.) A physical therapist's notes from two appointments include findings of normal range of cervical motion and no evidence of radicular pain. (Tr. 572, 581.) The evidence does not support Johnson's claim of debilitating cervical limitations.

Citing job descriptions from the Dictionary of Occupational Titles, Johnson also claims that

the jobs of administrative clerk and travel agent involve frequent reaching, handling, and fingering and that the ALJ's finding that she can perform these jobs is not supported by substantial evidence because he did not determine the impact her cervical radiculopathy would have on her ability to perform the upper body requirements of the jobs.

These claims should be rejected. The evidence does not support a finding that Johnson suffered from any impairment that would impair her ability to use her upper body or hands.  As the foregoing discussion demonstrates, the medical evidence does not support a finding that Johnson suffered from debilitating cervical limitations.  In addition and in the alternative, even if the court were to assume that Johnson is incapable of performing the work of an administrative clerk and travel agent, Johnson has not shown that she is incapable of performing her past work as a children's director, the third job the ALJ determined she could perform.  The regulations direct that the Commissioner will proceed to the fifth step of the sequential inquiry if it is determined that the claimant is incapable of performing "*any* of [his] past relevant work."  20 C.F.R. § 404.1560(c) (emphasis added).  The use of the word "any" indicates that the ALJ need only determine that a claimant can perform one of his past jobs.  Johnson does not claim she is incapable of performing her past work as a children's director.  The claimant bears the burden of proving that she cannot perform his past work.  *Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990) (citing *Hollis v. Bowen*, 837 F.2d 1378, 1386 (5th Cir. 1988)).  Johnson has not met that burden.

### IV.     The ALJ's Credibility Determinations

Johnson claims the ALJ failed to consider how side effects from her medication would affect her ability to work.  She further claims that the ALJ failed to consider whether her anxiety and depression exacerbated her perception of pain and that he did not specifically indicate why her testimony, her husband's testimony, and reports from her physicians did not support her allegations.

7

The ALJ must consider a claimant's testimony regarding subjective evidence of pain and failure to do so is reversible error. *Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. 1981). Often referred to as the credibility determination, the analysis requires the ALJ to weigh the objective medical evidence and assign articulated reasons for discrediting the claimant's subjective complaints. *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988) (citation omitted). The ALJ must "indicate the credibility choices made and the basis for those choices. *Scharlow*, 655 F.2d at 648-49; *see also* SSR 96-7p, 1996 WL 374186 (July 2, 1996) (The ALJ's decision must include findings that are "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

In making a credibility determination, the ALJ must consider (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, and side effects of any medication the claimant takes to alleviate his pain or other symptoms; (5) treatment, other than medication, the claimant may undergo or has undergone for relief of his pain or other symptoms; (6) any measure the claimant uses or has used to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions caused by pain or other symptoms. *Id*. § 404.1529(c)(3).

Thus, the ALJ must consider the claimant's medical history, the medical records, and statements from the claimant, the claimant's physicians, and other persons. *Id.* The ALJ should also consider objective medical evidence such as reduced joint motion, muscle spasm, sensory deficit, or motor disruption. 20 C.F.R. § 404.929(c)(2). The absence of objective factors such as limitations in range of motion, muscular atrophy, and weight loss may support an ALJ's decision that a

claimant's pain is not disabling. *Falco v. Shalala*, 27 F.3d 160,163 (5th Cir. 1994).

Contrary to Johnson's contentions, the ALJ considered her testimony, testimony from her husband, and examination notes from her physicians and gave specific reasons for not crediting the testimony and notes to the fullest extent. The ALJ determined that the objective medical evidence demonstrated the absence of objective factors (Tr. 18) and his determination is supported by substantial evidence. (*See, e.g.*, Tr. 243 (no focal weaknesses or sensory defects, normal gait and station, normal muscle tone), 296-97 (normal strength in upper extremities and no weakness in lower extremities), 271 (normal gait and station, no changes in muscle tone), 304 (full range of motion in lower extremities), 570 (good cervical range of motion), 581(functional range of motion in cervical and lumbar spine).)

The ALJ also considered Johnson's daily activities. In connection with his discussion regarding Johnson's allegations of mental impairments, the ALJ noted Johnson's reports that she was able to shop for clothes, groceries and gifts; use the computer; pay bills; attend church; and dine with friends. (Tr. 19.) Inconsistencies between a claimant's testimony about his limitations and his daily activities is a relevant consideration in the evaluation of a claimant's credibility. *Reyes v. Sullivan*, 915 F.2d 151, 155 (5th Cir. 1990). Although not specifically cited by the ALJ, other evidence shows that Johnson's pain was not disabling. Johnson reported that she left the house every day, ran errands, and performed basic household chores, such as laundry, tidying the house, and caring for her dog. (Tr. 164-66.) Although she reported that she was not able to "bake and can" as much as she would like, she cooked meals on a daily basis for her family. (Tr. 166, 445.) Such evidence is relevant to the court's analysis. Courts often look beyond the ALJ's decision, evaluating the record as a whole, to determine whether there is evidence, though not cited by the ALJ, that supports his credibility determination. *See, e.g.*, *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir.

1995) (citing evidence in the claimant's disability report); *Falco*, 27 F.3d at 163-64 (citing evidence related to the claimant's activities).

Finally, as the Commissioner argues, the evidence does not support a finding that Johnson suffered from side effects from medication that would interfere with her ability to work. The medical records, which are dated from June 2006 to January 2010, contain only two notations of medication side effects. Johnson reported in February 2009 that she did not like side effects caused by Lyrica, but there is no indication in the records as to how the medication affected her. (Tr. 566.) Johnson complained of sedating effects from Lortab in August 2007. (Tr. 271.) However, she was prescribed Norco for her pain in November 2007, and she reported that Norco gave her relief "without significant side effects of impaired ability to function." (Tr. 304, 322.)

The crux of Johnson's arguments is that the ALJ did not credit her complaints of pain. The court may sympathize with Johnson, but not all pain is disabling. Pain is not disabling unless it is constant, unremitting, and wholly unresponsive to therapeutic treatment. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). The responsibility for determining whether pain is disabling lies with the ALJ and his decision in this regard is entitled to considerable judicial deference. *Id.* Even in a case in which the evidence indicates a mixed record concerning a claimant's health problems and their limitations upon his ability to work, it is the ALJ's responsibility to weigh the evidence; the court is then charged with determining whether there is substantial evidence in the record as a whole to support the ALJ's determination. *Id*. at 523. In this case, the ALJ's conclusion that Johnson's pain was not disabling is supported by substantial evidence; the district court should therefore defer to his conclusion.

## V. Conclusion

For the foregoing reasons, this court recommends that the United States District Court **AFFIRM** the decision of the Commissioner and **DISMISS** Johnson's complaint.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2011); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: January 19, 2012.

_____
NANCY M. KOENIG
United States Magistrate Judge